UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WALKER, et al., individually and on behalf of all others similarly situated, | )<br>)<br>) |
| CALLAHAN, individually and on behalf of all others similarly situated, | )<br>)<br>) |
| Plaintiffs, | ) Case No. 10-cv-6994<br>) |
| v. | ) Judge John W. Darrah<br>) |
| DISCOVER FINANCIAL SERVICES, et al., | )<br>)<br>) |
| Defendants. | )<br>)<br>) |

## **MEMORANDUM OPINION AND ORDER**

This multi-district litigation currently involves eight putative class-action complaints that have been filed against Discover Financial Services, Inc., DFS Financial Services, LLC, and Discover Bank (collectively "Discover"); two of which were pending in this Court and six of which were transferred to this Court by the Judicial Panel of Multi-District Litigation ("JPML"). The eight actions are as follows:

*Walker, et al. v. Discover Fin. Serv., et al.*, No. 10-cv-6994 (N.D. Ill. July 8, 2010);

*Callahan, et al. v. Discover Fin. Serv., et al.*, No. 10-cv-7181 (N.D. Ill. July 8, 2010);

*Conroy, et al. v. Discover Fin. Serv., et al.*, No. 2:10-cv-5260 (C. D. Cal. July 16, 2010);

*Alexander, et al. v. Discover Fin. Serv., et al.*, No. 7:10-cv-02754 (D.S.C. Oct. 22, 2010);

*Sack, et al. v. Discover Fin. Serv., et al.*, No. 10-cv-2906 (W.D. Tenn. Dec. 17, 2010);

*Boyce, et al. v. Discover Fin. Serv., et al.*, No. 11-cv-265 (E.D. Pa. Jan. 14, 2011);

*Triplett, et al. v. Discover Fin. Serv., et al.*, No. 11-cv-20519 (S.D. Fla. Feb. 15, 2011);

*Carter, et al. v. Discover Fin. Serv., et al.*, No. 11-cv-1656 (E.D. Pa. Mar. 8, 2011). The Complaints generally allege that arising from the marketing, sale, operation and/or administration of Discover's payment protection plan (the "Plan"), Discover used deceptive and unlawful sales tactics when enrolling individuals into the Plan, charged higher fees than it advertised for the Plan, and/or otherwise omitted material facts about the Plan.

The case progress was impeded recently when various Plaintiffs' counsel could not reach a consensus on which counsel would serve as interim lead counsel pursuant to Fed. R. Civ. P. 23(g)(3).

Before the Court are two separate requests by Plaintiffs' counsel to be appointed interim lead counsel: (1) the Conroy Plaintiffs and Triplett and Carter Plaintiffs (the "Triplett/Carter Plaintiffs") request that their counsel, Murray Frank & Sailer LLC ("Murray Frank") and Carney Williams Bates Bozeman & Pulliam PLLC ("Carney Williams"), respectively, be appointed as interim co-lead counsel; and (2) the Walker Plaintiffs[1] request that the Court order a "tripartite structure" for lead counsel, under which the Walker Plaintiffs' counsel, Nagel Rice LLP ("Nagel Rice"), would serve as interim co-lead counsel with Conroy and Triplett/Carter counsel, Murray Frank and Carney Williams.

For the reasons set forth below, Nagel Rice and Murray Frank are appointed as interim co-lead counsel (collectively, "Interim Lead Co-Counsel"); and Miller Law is appointed as liaison counsel, pursuant to Fed. R. Civ. P. 23(g)(3).

---

[1] The Walker Plaintiffs represent the interests of the named Plaintiffs in the *Walker, Callahan, Alexander, Sack,* and *Boyce* actions. (Dkt. No. 122 at 1, n.1.)

## BACKGROUND

On January 22, 2010, the Callahan Plaintiffs filed the first of the class-action complaints against Discover relating to the Plan in the United States District Court for the Southern District of Illinois. (Dkt. No. 106 at 2.) On April 26, 2010, the Walker Plaintiffs filed a class-action complaint against Discover in the United States District Court of New Jersey based on similar allegations. (*Id.*) The Walker and Callahan Plaintiffs subsequently voluntarily dismissed the above complaints and filed a new consolidated class-action complaint on July 8, 2010, in the U.S. District Court for the Northern District of California. (Dkt. No. 1.) On October 25, 2010, Discover's Motion to Transfer Venue to the Northern District of Illinois was granted.

After July 8, 2010, the other six class-action lawsuits were filed in other jurisdictions based on common allegations regarding Discover's payment protection plan. On November 22, 2010, the Walker Plaintiffs filed an action pursuant to 28 U.S.C. § 1407, before the Judicial Panel of Multi-District Litigation ("JPML") to consolidate pretrial proceedings of the then-pending cases.

On November 24, 2010, the Walker Plaintiffs filed a motion in this Court for their counsel to be appointed interim co-lead counsel (Dkt. No. 79), which the Court granted on December 2, 2010, before all the class actions had been transferred to this Court.[2] (Dkt. No. 82.) On March 11, 2011, the Triplett/Carter Plaintiffs, whose case had been transferred here after the 12/2/10 Order, filed a Motion to Reopen the Process For Selecting Interim Lead Counsel Under Fed. R. Civ. P. 23(g). (Dkt. No. 103.) Various

---

[2] All eight class actions had been transferred to this Court by March 22, 2011.

briefs have been filed relating to this motion. (*See* Dkt. Nos. 106, 114; *see also* Dkt. Nos. 120, 122.) At the status hearing on March 31, 2011, Plaintiffs' counsel were strongly encouraged to meet and confer and come to an agreement regarding which counsel would serve as interim lead counsel. Instead of reaching an agreement, on April 4, 2011, a day before a scheduled status conference, the Walker Plaintiffs and the Conroy and Triplett/Carter Plaintiffs filed the instant motions. At the status hearing on April 5, 2011, Plaintiffs' counsel stated that they could not reach an agreement. The motion to reopen the process of selecting interim lead counsel is granted and is decided as follows.

## LEGAL STANDARD

Rule 23(g)(3) of the Federal Rules of Civil Procedure provides: "The court may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." The Manual for Complex Litigation advises that:

> If . . . there are a number of overlapping, duplicative, or competing suits pending in other courts, and some or all of those suits may be consolidated, a number of lawyers may compete for class counsel appointment. In such cases, designation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification and negotiating settlement.

Manual for Complex Litigation (Fourth) ("MCL") § 21.11 (2004). Although neither the federal rules nor the advisory committee notes expressly so state, it appears to be generally accepted that the considerations set out in Rule 23(g)(1)(C), which governs appointment of class counsel once a class is certified, apply equally to the designation of interim class counsel before certification. *See, e.g., Hill v. The Tribune Co.*, No. 05-cv-2602, 2005 WL 3299144, at *3 (N.D. Ill. Oct. 13, 2005) ("Rule 23(g) provides criteria to

4

consider when appointing class counsel. No distinction is made regarding appointing interim counsel."). These factors include: an applicant's (1) work in identifying or investigating potential claims in the action, (2) experience in handling complex litigation and the types of claims asserted in this action, (3) knowledge of applicable law, and (4) ability to commit sufficient resources to representing the class. Fed. R. Civ. P. 23(g)(1)(A).

If more than one adequate applicant seeks to be designated, "the court must appoint the applicant best able to represent the interests of the class." Fed. R. Civ. P. 23(g)(2). Courts, however, have frequently appointed more than one firm to act as interim-lead and/or lead counsel. *See, e.g., Waudby v. Verizon Wireless Serv., LLC*, 248 F.R.D. 173, 177 (D.N.J. 2008) (appointing four firms as interim class counsel); *In re Air Cargo Shipping*, 240 F.R.D. 56, 58-59 (E.D.N.Y. 2006) (appointing four firms as co-lead counsel); *Nowak v. Ford Motor Co.*, 240 F.R.D. 355, 356 (E.D. Mich. 2006); *In re Pressure Sensitive Labelstock Antitrust Litig.*, No. 3:03-MLD-1566, 2007 WL 415066, at *22-23 (M.D. Pa. Nov. 19, 2007) (appointing four law firms as co-lead class counsel after previously appointing the same four firms as co-lead interim class counsel). The Advisory Committee Notes to the 2003 Amendments to Rule 23(g) state, "no single factor should be dispositive in selecting class counsel in cases in which there are multiple applicants." One factor a court may consider is whether an attorney has undertaken "the process of drafting the complaint [which] requires investigatory and analytical effort." Moore's Federal Practice § 23.120[3][a] (2007).

Liaison counsel may be appointed at the discretion of the Court. *See, e.g., In re Ameriquest Mortg. Co. Mortg. Lending Practices Litig.*, No. 05-cv-7097, 2008 WL

5170769, at *2 (N.D. Ill. Dec. 10, 2008). The MCL § 10.221 outlines the responsibilities of liaison counsel:

> Charged with essentially administrative matters, such as communications between the court and other counsel (including receiving and distributing notices, orders, motions, and briefs on behalf of the group), convening meetings of counsel, advising parties of developments, and otherwise assisting in the coordination of activities and positions. Such counsel may act for the group in managing document depositories and in resolving scheduling conflicts. Liaison counsel will usually have offices in the same locality as the court. The court may appoint (or the parties may select) a liaison for each side, and if their functions are strictly limited to administrative matters, they need not be attorneys.

## ANALYSIS

According to the criteria set forth in Rule 23(g)(1)(A), Nagel Rice and Murray Frank are best qualified as Interim Lead Co-Counsel to represent the interests of the putative class. Discover does not dispute the adequacy of either law firm to serve as class counsel; nor does either law firm question the competency, experience, or resources of the other. Of the three law firms that seek appointment as interim lead counsel, Nagel Rice and Murray Frank were the first to file putative class-action complaints against Discover in April and July 2010, respectively. As such, these two law firms have been involved in this litigation for the longest time period and have performed the most work in identifying and investigating potential claims. Because Nagel Rice and Murray Frank have performed such investigative and analytical tasks, they are in "a better position to represent the class fairly and adequately than [Carney Frank] who did not undertake those tasks." Moore's Federal Practice § 23.120[3][a].

Indeed, the Triplett Plaintiffs represented by Carney Williams filed their class-action on February 8, 2011, more than two months after the Walker Plaintiffs filed an

action before the JPML. The Carter Plaintiffs filed their class action on March 8, 2011, *after* the JPML issued the Transfer Order. Therefore, it would follow that Carney Williams has not had the opportunity, given the relatively short period of time it has been involved in the case, to conduct that degree of investigation and analysis as had Nagel Rice and Murray Frank.

Nagel Rice has spent a considerable amount of time and effort investigating and prosecuting this action to date. For example, some of Nagle Rice's efforts include: coordinating with the Callahan Plaintiffs and filing a consolidated class-action complaint on July 8, 2010; drafting a Proposed Second Amended Complaint that includes additional theories of recovery, including an "efficacy claim" (Dkt. No. 116, Ex. 2.); drafting discovery that was served on Discover and third-party vendors relating to Discover's Motion to Compel Arbitration; committing resources in anticipation of responding to Discover's Motion to Compel Arbitration (the briefing on which has been stayed); conducting meet-and-confer conferences with Discover's counsel regarding discovery; retaining an expert that specializes in claims against credit card companies to model damages; and engaging in negotiation with Discover regarding a potential class-wide settlement.[3] (Dkt. No. 122 at 2-3.) Among the most relevant of Nagel Rice's efforts is the filing of the July 8, 2010 Complaint, which required Nagel Rice to coordinate with the Callahan Plaintiffs and file a consolidated class-action complaint that reflects more than one putative class-action's theory of recovery.

---

[3] The Walker Plaintiffs state that they have made "'significant progress' towards resolution of the entire matter." (Dkt. No. 122 at 3.)

In light of Nagel Rice's efforts in prosecuting this case to date, it would be significantly prejudicial to the interests of all class members to exclude Nagel Rice from continuing to represent the putative class members at the interim stage as requested by the Conroy and Triplett/Carter Plaintiffs. Importantly, Nagel Rice has been involved in settlement negotiations with Discover and has been able to obtain experience and information as a result thereof that also may be helpful in representing the interests of the class. Positive results from those efforts could be largely lost if Nagel Rice was excluded from representing the putative class.

Murray Frank has also expended resources in identifying and investigating potential claims: specifically, the Conroy and Triplett/Carter Plaintiffs' "efficacy claim," which, until recently, was not being pursued by Nagel Rice. (*See* Dkt. No. 120 at 5.) In Conroy and Triplett/Carter Plaintiffs' "efficacy claim," they allege that "Discover [engaged in a] practice of selling a product without any inquiry or effort to determine if the cardholder is eligible for such a product, and without disclosing all of the policy exclusions, thereby substantially overcharging class members for productions." (Dkt. No. 120 at 3.) By contrast, the Conroy and Triplett/Carter Plaintiffs argue, the Walker Plaintiffs focus on two other narrow claims regarding unauthorized enrollment in the Plan. (*Id.* at 5.) But the Conroy and Triplett/Carter Plaintiffs do not appear to be pursuing claims regarding "slamming" or "unauthorized enrollment" as does Nagel Rice on behalf of the Walker Plaintiffs. As the JPML noted, the Conroy Plaintiffs' action "is somewhat different from the other complaints" because of its efficacy claim. (Dkt. No. 120 at 2.) Moreover, even the Walker Plaintiffs stated that the *Conroy* action is an "outlier" case, thus appearing to acknowledge that the *Conroy* claims may be slightly

8

different. (*See* 12/2/10 Hr'g Tr. (referring to the transfer action before the JPML, Walker Plaintiffs' counsel stated: "We understand the [Conroy] action may oppose. We consider that really an outlier case. They believe they have a different theory; they're in California only.").) Therefore, the appointment of Murray Frank and Nagel Rice as Interim Lead Co-Counsel will most adequately represent the interests of the class in prosecuting all theories and claims against Discover.

In conclusion, Interim Lead Co-Counsel satisfy the remaining three factors set forth in Rule 23(g)(1)(A). As demonstrated by their professional biographies, both Nagel Rice and Murray Frank have substantial experience in handling class-action and other complex litigation, including consumer-fraud cases, and, therefore, also have the requisite knowledge of the applicable law. (Dkt. No. 106 at 14-16 and Dkt. No. 79, Ex. A (detailing Nagel Rice's representative cases and the partners' professional biographies); Dkt. No. 120, Ex. 1 (listing Murray Frank's representative cases and the partners' professional biographies).)

Finally, the appointment of Miller Law as liaison counsel is appropriate in this case. *See* MCL § 10.221 (outlining the responsibilities of liaison counsel). Neither Nagel Rice nor Murray Frank has an office in Chicago; nor do they, as their biographies demonstrate, have substantial experience litigating cases in the U.S. District Court for the Northern District of Illinois. By contrast, Miller Law is a Chicago-based firm that has substantial experience in class-action, multi-district, and other complex litigation, particularly in the Northern District of Illinois and in this Court. (*See* Dkt. No. 121, Ex. C.) *See* MCL § 10.221 ("Liaison counsel will usually have offices in the same locality as the court."). Miller Law has the requisite experience to serve as efficient and

professional liaison counsel. *See, e.g., Lawrence E. Jaffe Pension Plan v. Household Int'l*, No. 02-cv-5793 (N.D. Ill.); *Kohen, et al. v. Pacific Inv. Mgmt. Co.*, No. 05-cv-4681 (N.D. Ill.); *Murphy v. CDW Corp.*, No. 07-cv-3033 (N.D. Ill.); *In re Aftermath Filters Antitrust Litig.*, No 08-cv-4883 (N.D. Ill.); *City of Livonia v. Boeing*, No. 09-cv-714 (N.D. Ill.). In addition to the responsibilities Miller Law and Interim Lead Co-Counsel agree upon, Miller Law shall be responsible for: (1) keeping Interim Lead Co-Counsel fully informed of all relevant events and coordinating and scheduling hearings with opposing counsel and the Court; and (2) acting as primary Plaintiffs' contact person for the Court.

## CONCLUSION

In light of the number of pending actions and the existence of two general categories of claims presented, "achieving efficiency and economy without jeopardizing fairness to the parties," MCL § 10.224, is best achieved by the appointment of Nagel Rice and Murray Frank as Interim Lead Co-Counsel and Miller Law as interim liaison counsel.

Date: 5-26-11

JOHN W. DARRAH
United States District Court Judge