**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **In re: Discover Payment Protection Plan Marketing and Sales Practices Litigation** | **Master File No. 1:10-cv-06994-JWD** **MDL 2217** **This Document Relates to All Cases** |

**MEMORANDUM OF LAW (I) IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT; (II) IN RESPONSE TO TIMELY OBJECTIONS TO THE SETTLEMENT AGREEMENT; AND (III) IN RESPONSE TO OBJECTIONS TO THE AWARD OF ATTORNEYS' FEES AND EXPENSES OF CLASS COUNSEL**

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................. 1

II.    PRELIMINARY STATEMENT ........................................................................... 1

III.   HISTORY, BACKGROUND, AND SETTLEMENT OF THE ACTION ........................ 2

    A.  History and Background ..................................................................................... 2

    B.  Mediations .......................................................................................................... 3

    C.  The Settlement ................................................................................................... 5

IV.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE .......... 7

    A.  The Law Favors and Encourages Settlements .................................................. 7

    B.  The Role of the Court in Determining Whether to Approve a
        Class Action Settlement ..................................................................................... 7

    C.  The Settlement Agreement Resulted from Arm's-Length
        Negotiations andwas not the Product of Collusion ........................................... 8

    D.  The Settlement Satisfies the Criteria For Approval .......................................... 9

        1.  The Strength of the Plaintiffs' Claims Compared to Settlement
            Weighs in Favor of Granting Final Approval ........................................... 9

        2.  The Stage of the Proceedings at Which Settlement was Achieved
            Supports Approval of the Settlement ...................................................... 11

        3.  The Range of Reasonableness of the Settlement Fund in Light of the
            Best Possible Recovery and In Light of All the Risks of Litigation
            Supports Approval of the Settlement ...................................................... 13

        4.  The Complexity, Expense, and Duration of Further Litigation
            Supports Approval of the Settlement ...................................................... 14

        5.  The Reaction of the Class Supports Approval of the Settlement. ............... 15

        6.  The Opinion of Competent Counsel Favors Approval of the Settlement. ...... 16

V.    THE NOTICE TO THE CLASS SATISFIED DUE PROCESS ....................................... 17

VI.    THE PLAN OF ADMINISTRATION AND DISTRIBUTION IS
FAIR AND REASONABLE AND SHOULD BE APPROVED .................................... 17

VII.    THE OBJECTIONS BY CLASS MEMBERS SHOULD BE OVERRULED.................. 18

1.   Objector Archer ...................................................................................................... 19

2.   Objector Dixon........................................................................................................ 19

3.   Professional Objector Petrus................................................................................... 20

a.   Considerations Specific to Professional Objectors ........................................ 20

b.   Professional Objector Petrus' Complaints About Attorneys' Fees
and Costs Are Not Well-Founded ................................................................... 21

c.   Professional Objector Petrus' Claim of "Conflicts" Is Not Well-Founded ................... 22

VIII.   CONCLUSION................................................................................................... 23

## TABLE OF AUTHORITIES

**Page**

**Statutes and Rules**

Fed. R. Civ. P. 23 ................................................................................................................. *passim*

**Cases**

*Am. Civil Liberties Union v. United States Gen. Servs. Admin.*,
    235 F. Supp. 2d 816 (N.D. Ill. 2002) ..................................................................... 15

*Armstrong v. Board of School Dist.*,
    616 F.2d 305 (7th Cir. 1980) ............................................................................. 8, 15

*Aro Corp. v. Allied Witan Co.*,
    531 F.2d 1368 (6th Cir. 1976),
    *cert. denied* 429 U.S. 862 (1976) ......................................................................... 16

*AT&T Mobility, LLC* v. *Concepcion*,
    131 S. Ct. 1740 (2011) ............................................................................... 3, 10, 14

*Barnes v. FleetBoston Fin. Corp.*,
    2006 U.S. Dist. LEXIS 71072 (D. Mass 2006) ....................................................... 20

*Berger v. Xerox Ret. Income Guar. Plan*,
    231 F. Supp. 2d 804 (S.D. Ill. 2002) ...................................................................... 20

*Chatelain v. Prudential-Bache Sec. Inc.*,
    805 F. Supp. 209 (S.D.N.Y. 1992) ......................................................................... 8

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ............................................................................... 18

*Felzen v. Andreas*,
    134 F.3d 873 (7th Cir. 1998) ................................................................................. 8

*Gautreaux v. Pierce*,
    690 F.2d 616 (7th Cir. 1982) .............................................................................. 8, 9

*Haynes v. Shoney's, Inc.*,
    No. 89-30093-RV, 1993 U.S. Dist. LEXIS 749 (N.D. Fl. Jan 25, 1993) ............... 14

iii

*Hispanics United v. Vill. of Addison*,
  988 F. Supp. 1130 (N.D. Ill. 1997) ................................................................. 16

*In re "Agent Orange" Prod. Liab. Litig.*,
  611 F. Supp. 1396 (E.D.N.Y. 1985),
  *modified on other grounds*, 818 F.2d 179 (2d Cir. 1987),
  *cert. denied*, 487 U.S. 1234 (1988) ............................................................... 14

*In re AT&T Mobility Wireless Data Services Litig.*,
  270 F.R.D. 330 (N.D. Ill. 2010) .......................................................... 10, 12, 17

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
  789 F. Supp. 2d 935 (N.D. Ill. 2011) ............................................................. 22

*In re Gulf Oil/Cities Service Tender Offer Litig.*,
  142 F.R.D. 588 (S.D.N.Y. 1992) ................................................................... 15

*In re Initial Public Offering Sec. Litig.* ("*In re IPO Sec. Litig.*"),
  --- F. Supp. 2d ---, 2010 WL 2884794 (S.D.N.Y. July 20, 2010)............................ 21

*In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*,
  733 F. Supp. 2d 997 (E.D. Wis. 2010) ........................................................... 10

*In re Mexico Money Transfer Litig.*,
  164 F. Supp. 2d 1002 (N.D. Ill. 2000) ........................................................... 14

*In re NASDAQ Market-Makers Antitrust Litig.*,
  169 F.R.D. 493 (S.D.N.Y. 1996) ................................................................... 22

*In re Nissan Motor Corp. Antitrust Litig.*,
  552 F.2d 1088 (5th Cir. 1977) ...................................................................... 17

*In re Oracle Sec. Litig.*,
  [1994-1995 Transfer Binder] Fed. Sec. L. Rep. (CCH)
  P 98,355 at 90,446 (N.D. Cal. Jun. 18, 1994)................................................... 18

*Isby v. Bayh*,
  75 F.3d 1191 (7th Cir. 1996) ............................................................... passim

*Kurz v. Philadelphia Elec. Co.*,
  96 F.3d 1544 (3d Cir. 1996)......................................................................... 15

*Lipuma v. Am. Express Co.*,
  406 F. Supp. 2d 1298 (S.D. Fla. 2005) ..................................................... 10, 11

*Mangone v. First USA Bank*,
206 F.R.D. 222 (S.D. Ill. 2001) ................................................................. 12, 15, 17

*Milliron v. T-Mobile USA, Inc.*,
2009 U.S. Dist. LEXIS 101201 (D.N.J. Sept. 10, 2009) ........................................ 21

*Newman v. Stein*,
464 F.2d 689 (2d Cir. 1972)..................................................................................... 13

*O'Keefe v. Mercedes-Benz USA, LLC*,
214 F.R.D. 266 (E.D. Pa. 2003)............................................................................... 21

*Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*,
390 U.S. 141 (1968)................................................................................................. 14

*Robbins v. Koger Properties, Inc.*,
116 F.3d 1441 (11th Cir. 1997) ............................................................................... 15

*Scholes v. Stone, McGuire & Benjamin*,
839 F. Supp. 1314 (N.D. Ill. 1993) ........................................................................... 8

*Slomovics v. All for a Dollar, Inc.*,
906 F. Supp. 146 (E.D.N.Y. 1995) .......................................................................... 15

*Strang v. JHM Mortgage Securities L.P.*,
890 F. Supp. 499 (E.D. Va. 1995) ............................................................................. 9

*Sullivan v. DB Invs., Inc.*,
667 F.3d 273 (3d Cir. 2011)........................................................................... 21, 22, 23

*Third Party Verification, Inc. v. Signaturelink, Inc.*,
492 F. Supp. 2d 1314 (M.D. Fla. 2007) ................................................................... 11

*Uhl v. Thoroughbred Tech. & Telecomms., Inc.*,
309 F.3d 978 (7th Cir. 2002) ..................................................................................... 7

*Vollmer v. Selden*,
350 F.3d 656 (7th Cir. 2003) ................................................................................... 20

*White v. NFL*,
822 F. Supp. 1389 (D. Minn. 1993),
*aff'd* 41 F.2d 402 (8th Cir. 1994)............................................................................ 18

**<u>Miscellaneous</u>**

2 NEWBERG ON CLASS ACTIONS, §11.41 at 11-88 (3d ed. 1992) ..................................................... 8

4 NEWBERG ON CLASS ACTIONS (4th ed. 2002) § 11.58......................................................... 18, 20

## I.    INTRODUCTION

Plaintiffs,[1] individually and on behalf of all other persons similarly situated, submit this memorandum (i) in support of Final Approval of Class Action Settlement, (ii) in response to timely objections to the Settlement Agreement, and (iii) in response to objections to the award of attorneys' fees and expenses of class counsel.

## II.    PRELIMINARY STATEMENT

The settlement of the above-captioned action (the "Settlement") is the product of extensive investigation and discovery, aggressive litigation, and arm's-length negotiations, taking into account the significant risks specific to this case, including the substantial risks of continued litigation.   It was negotiated by experienced and informed counsel with a firm understanding of the strengths and weaknesses of their clients' respective positions. *See* Joint Declaration of Diane E. Sammons and Brian P. Murray ("Joint Dec."), submitted herewith, at ¶¶ 6-8.  In addition, two widely respected mediators facilitated this Settlement. *See* Declaration of Layn Phillips ("Phillips Dec.") and Declaration of Jonathan Marks ("Marks Dec.")  attached to the Joint Dec. as Exs. A and B.

This Settlement is an outstanding result for the Class, clearly satisfies the standards for approval set forth by the Seventh Circuit, and is unquestionably fair, reasonable, and adequate. Furthermore, the Plan of Administration and Distribution provides for a practical, efficient method of an equitable distribution among Class Members.  Accordingly, this Settlement is in the best interests of the Class, and this Court should grant final approval of the Settlement in this Action.

---

[1] "Plaintiffs" means named plaintiffs Devavani Conroy, Renee Walker, Jason Chan, Robert Ackerman, Michele Kraynak, Shawn Irvine, Anthony DeMarco, Marti Kelmer, Jose Cruz, Robert Hibbs, Jason Hart, Tammy Marsh, Charles Triplett, Kathleen Callahan, Brian Boyce, Ulonda Carter, Diane Alexander, and Karin Sack.

## III.  HISTORY, BACKGROUND, AND SETTLEMENT OF THE ACTION

### A.  History and Background

This class action was brought on behalf of millions of persons or entities who were enrolled in or billed for various Products[2] by Discover Bank and related entities (collectively "Discover" or "Defendants") for claims, including, among others, violations of various states' deceptive trade practices acts.

Several class actions were filed around the country.[3]  The allegations in the actions include, among others, that: (a) Plaintiffs were enrolled in the Products without their consent; (b) sales agents misrepresented and omitted material facts regarding the cost of DPP; (c) sales agents misled Plaintiffs by hiding the true nature of telemarketing calls and misrepresenting that Plaintiffs would receive promotional materials prior to enrollment into the Products; (d) sales agents misrepresented the date of enrollment for DPP; (e) Plaintiffs improperly were charged for DPP an amount equal to .89/100 multiplied by their account balance each month rather than .89 cents for

---

[2] "Products" means include Discover Payment Protection (formerly known as "AccountGuard") ("DPP"), Identity Theft Protection (f/k/a "Profile Protect") ("ITP"), Wallet Protection (f/k/a "The Register") ("WP"), and/or Credit Score Tracker ("CST").

[3] The class actions include:  *Kelmer v. DFS Services LLC, et al.* (S.D. Ill. Case No. 3:10-cv-00050-GPM)(filed January 22, 2010) (the "*Kelmer* Action"); *Ackerman v. Discover Financial Services, Inc., et al.* (D.N.J. Case No. 3:10-cv-02118-JAP-LHG)(filed April 26, 2010) (the "*Ackerman* Action"), *Walker v. Discover Financial Services, et al.* (N.D. Ill. Case No. 10-cv-06994-JWD) (filed July 8, 2010) (the "*Walker* Action"); *Callahan v. Discover Financial Services, et al.* (N.D. Ill. Case No. 1:10-cv-07181-JWD) (filed November 11, 2010) (the "*Callahan* Action"); *Alexander v. Discover Financial Services, et al.* (D.S.C. Case No. 7:10-cv-02754-HMH) (filed October 22, 2010) (the "*Alexander* Action"), *Sack* v. *DFS Services LLC, et al.* (W.D. Tenn. Case No. 2:10-cv-02906-JPM) (filed December 17, 2010) (the "*Sack* Action"); *Boyce* v. *DFS Services LLC, et al.* (E.D. Pa. Case No. 2:11-cv-00265-LDD) (filed January 14, 2011) (the "*Boyce* Action"); *Conroy* v. *Discover Financial Services, et al.* (C.D. Cal. Case No. 2:10-cv-5260-MMM-E) (filed July 16, 2010) (the "*Conroy* Action"); *Triplett* v. *Discover Financial Services, Inc., et al.* (S.D. Fla. Case No. 1:11-cv-20519-AJ) (filed February 15, 2011) (the "*Triplett* Action"); *Carter* v. *Discover Financial Services, Inc., et al.* (E.D. Pa. Case No. 2:11-cv-01656-BMS) (filed March 8, 2011) (the "*Carter* Action"); *Hyzy* v. *Discover Financial Services, Inc. et al.* (S.D. Ill. Case No. 3:10-cv-00956-JPG-CJP) (the "*Hyzy* Action"). On February 7, 2011, the Judicial Panel on Multidistrict Litigation transferred the Actions to an MDL proceeding in the Northern District of Illinois, *In re: Discover Payment Protection Plan Marketing and Sales Practices Litigation,* MDL No. 2217.

each full $100 of their account balance; (f) certain Plaintiffs were enrolled in DPP despite being ineligible for DPP benefits; (g) the fees for the Products were unconscionably high; and (h) certain Plaintiffs were improperly denied DPP benefits.

Defendants filed various Motions to Compel Arbitration and Stay Proceedings, relying on its standard, pre-printed consumer contract. Plaintiffs' Counsel[4] conducted discovery on the issue of arbitration and prepared responses to Defendants' Motion to Compel Arbitration. During the course of this discovery, the United States Supreme Court issued *AT&T Mobility, LLC* v. *Concepcion,* 131 S. Ct. 1740 (2011), relating to the enforceability of an arbitration provision, which had a significant impact on this case.

### B.    Mediations

On March 21, 2011 and on March 28, 2011, District Judge Layn Phillips (retired) mediated this matter. Ex. A, Phillips Dec., at ¶¶ 7-11. On June 7, 2011, the parties resumed the mediation, facilitated by Jonathan Marks, Esq. Ex. B, Marks Dec., at ¶¶ 15-21. Prior to these additional sessions, Plaintiffs' Counsel reviewed confidential data. After three days of mediation, the parties reached an agreement in principle as it related to DPP and Memorandum of Understanding outlining the terms of the Settlement was executed on June 7, 2011. The parties then engaged in additional negotiations on June 16, 2011 to finalize the terms of the Amended Memorandum of Understanding as it related to ITP, WP, and CST. Joint Dec. at ¶ 21.

The three mediation sessions and one day of additional settlement negotiations, coupled with the extensive investigation and research already conducted by Plaintiffs' Counsel, allowed

---

[4] "Plaintiffs' Counsel" includes court appointed Class Counsel Nagel Rice, LLP and Murray Frank LLP, along with liaison counsel Miller Law LLC; and additional counsel Carey Danis & Lowe; Paris Ackerman & Schmierer LLP; Carney Williams Bates Bozeman & Pulliam, PLLC; Carter Walker, PLLC; Owings Law Firm; Lieff Cabraser Heinmann & Bernstein, LLP; Glancy Binkow & Goldberg LLP; Golomb & Honik, P.C.; Taus Cebulash & Landau LLP; Harris White Smith and Coggins; Hughes Ellzey, Skouteris & Magee, PLLC; Deal, Cooper & Holton, PLLC, McCausland Keen & Buckman; Ku & Mussman P.A.; Lasky & Rifkind, Ltd; Rukin Hyland Doria & Tindall LLP; and Bailey Perrin Bailey.

Plaintiffs' Counsel to fully assess the strengths and weakness of both Plaintiffs' claims and the potential defenses available to Defendants. Against this background and with the aid of experienced mediators, the parties were able to effectively engage in informed, arm's-length negotiations. Joint Dec. at ¶ 22.

To confirm the reasonableness of the Settlement's terms and conditions, Plaintiffs' Counsel has engaged in confirmatory discovery. This confirmatory discovery entailed reviewing and analyzing thousands of pages of internal documents from Defendants and engaging in two full days of interviews with Discover representatives most knowledgeable about the Products on September 2, 2011 and Discover representatives most knowledgeable about the metrics related to the Products on September 9, 2011. Joint Dec. at ¶ 23. In particular, on September 2, 2011 Plaintiffs' counsel interviewed Discover's Director of Product Marketing, Ryan Garton, who had responsibility for marketing the Products. *Id.* Plaintiffs' counsel spoke with Mr. Garton about: (a) marketing and sales of the Products, including disclosures (e.g., direct mail, phone scripts), (b) how pricing for the Products was determined, (c) the involvement of third parties in marketing and administration of the Products, and (d) Discover's controls over these third parties. *Id.* The information Mr. Garton provided to Plaintiffs confirmed information already presumed by the Plaintiffs and provided additional, non-public information that provided Plaintiffs additional comfort in the terms of the Settlement reached with Discover. *Id.* Furthermore, on September 9, 2011, Plaintiffs' Counsel interviewed Nancy O'Keefe, Marketing Director in the Marketing Operations Department of Discover. She was the person who was designated by Discover as having the most knowledge as to the metrics provided to Plaintiffs' in advance of mediation. *Id.* Ms. O'Keefe was able to: (a) describe the administration of the plans; (b) describe the types of reports that were generated pursuant to the plans; (c) confirm the

4

process for securing data such as: (i) the number of enrollees in the plans; ii) the average monthly balances revenue figures; iii) the average length of enrollment of participants; iv) benefits activated vs. benefits denied; v) and the internal procedures used by Discover to confirm these metrics. *Id.* In addition, Plaintiffs' Counsel received a declaration from Ms. O' Keefe who further confirmed the accuracy of the information relative to the analytic figures that Plaintiffs' Counsel received from Discover and the process by which the database and analytic process used by Discover was audited. *Id.*

### C.     The Settlement

Accordingly, on October 13, 2011, the parties filed a Motion for (1) Preliminary Approval of a Class Action Settlement, (2) Conditional Certification of Settlement Class, (3) Appointment of Settlement Class Counsel and Class Representatives, (4) Approval of Class Notice Plan, and (5) Scheduling a Final Approval Hearing (the "Motion for Preliminary Approval"). On November 9, 2011, the Court determined that the proposed Settlement was within the range of possible approval, provisionally certifying the Settlement Class, appointing Plaintiffs as representatives of the Settlement Class, conditionally appointing settlement Class, setting a fairness hearing, authorizing the appointment of a Settlement Administrator, and authorizing notice to Settlement Class Members (the "Preliminary Approval Order").

In accord with the Court's Preliminary Approval Order, notice was mailed to approximately 10.2 million individuals[5] and a webpage was created to give Settlement Class members access to case-related documents such as the Settlement Agreement, the Notice, and the Claim Form. The court-approved Notice that was mailed to Settlement Class Members

---

[5] Rust Consulting, Inc. ("Rust" or the "Settlement Administrator") mailed 5,921,706 Postcard Notices to Class members who were no longer Discover cardmembers, and Discover mailed 4,298,071 Statement Notices with account statements to current cardmembers. *See* Hodne Dec. at ¶8; Declaration of Nancy M. O'Keefe, at ¶ 2. By January 20, 2012, all Notices were mailed to Class members. Hodne Dec. at ¶8.

provided an overview of the litigation, a summary of the proposed Settlement, and informed Settlement Class Members of their rights and options in the proposed Settlement. Plaintiffs' Counsel have received and responded to questions and inquiries from Settlement Class Members. To date, out of the entire mailing to more than 10.2 million individuals sent notice, 1,833 have requested to be excluded (but only 1,824[6] have timely requested to be excluded), the Settlement Administrator has determined 398,158 notices to be undeliverable (or 6.7% of the notices mailed), and only 6 individuals have objected to the Settlement. *See* Declaration of Tore Hodne ("Hodne Dec."), at ¶¶ 9, 13, attached as Ex. C to the Joint Declaration.

In resolving all claims in the Litigation, the Defendants agreed to pay $10.5 Million in cash into a claims made Settlement Fund for the benefit of the Settlement Class.[7] This total amount includes notice costs, of approximately $1,600,766 million to date of which $1,500,000 million will be paid from the Settlement Fund and which, in part, has been advanced by Discover. *See* Hodne Dec., at ¶ 17; Settlement Agreement at III.C.3.[8] In compliance with the terms of the Settlement, Defendants will pay the balance of the $10.5 Million Settlement Amount into the Settlement Fund within five (5) business days after the Final Approval Order is entered and received by Discover's counsel.

---

[6] Of the 1,824 exclusions filed in a timely manner, seven have also filed claim forms. These individuals are noted on the list. Rust will send a letter to these individuals in an effort to determine the true intentions of each person. *See* Hodne Dec., at ¶ 13, n1.

[7] The "Settlement Class" is defined as "All persons in the United States who were enrolled in or billed for Discover Payment Protection, AccountGuard, Identity Theft Protection, Profile Protect, Wallet Protection, The Register and/or Credit Score Tracker between January 21, 2004 and November 9, 2011." An individual fitting this definition (an "Eligible Class Member") is entitled to claim one settlement award for each Product in which he or she was enrolled during the Class Period, provided he or she provides a timely and correct Claim Form.

[8] A copy of the Settlement Agreement can be found at Exhibit 1 to the Memorandum in Support of Motion for (1) Preliminary Approval of a Class Action Settlement, (2) Conditional Certification of a Settlement Class, (2) Appointment of Settlement Class Counsel and Class Representatives, (4) Approval of Class Notice Plan, and (5) Scheduling a Final Approval Hearing [Dkt. No. 148].

This is a settlement of claims arising throughout the nation for a period beginning on January 24, 2004. In most states, the statutes of limitations have expired for these claims, and in many states, deceptive trade practices claims for consumer class actions cannot be certified. As such, this settlement is a remarkable result. The proposed settlement is fair, reasonable, and adequate and satisfies all of the criteria for final class action settlement approval and class certification.

## IV.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE

### A.    The Law Favors and Encourages Settlements

Under Federal Rule of Civil Procedure 23(e), "claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). In cases where the settlement "would bind class members, the court may approve [the settlement] only after a hearing and finding that it is fair, reasonable, and adequate." Fed R. Civ. P. 23(e)(2). "Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). The Seventh Circuit has found that a district court's inquiry as to whether to grant approval "is limited to [the consideration of] whether the proposed settlement is lawful, fair, reasonable and adequate." *Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 986 (7th Cir. 2002).

### B.    The Role of the Court in Determining Whether to Approve a Class Action Settlement

Rule 23(e) requires court approval of any voluntary compromise of a class action and requires notice regarding the proposed settlement be provided to all class members. In this regard, approval of the settlement is left to the discretion of the court. *See Armstrong v. Board of School Dist.*, 616 F.2d 305, 313 (7th Cir. 1980) (holding that a district court's finding that a settlement is fair, reasonable and adequate will not be reversed unless there is a clear showing of

abuse of discretion) (overruled on other grounds by *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998)). In determining the fairness of the settlement, the judge is "entitled to rely heavily on the opinion of competent counsel." *Armstrong*, 616 F.2d at 325; *see also Gautreaux v. Pierce*, 690 F.2d 616, 634 (7th Cir. 1982).

C.     **The Settlement Agreement Resulted from Arm's-Length Negotiations and was not the Product of Collusion**

As an initial matter, courts recognize an initial presumption that a proposed settlement is fair and reasonable when it is the result of arm's-length negotiations. *See* 2 NEWBERG ON CLASS ACTIONS, §11.41 at 11-88 (3d ed. 1992).

Settlement negotiations that are conducted at arm's-length and in good faith demonstrate that a settlement is not the product of collusion. *Scholes v. Stone, McGuire & Benjamin*, 839 F. Supp. 1314, 1318 (N.D. Ill. 1993). Absent collusion, a court should give significant weight to the judgment of counsel:

> The settlement must be the result of arm's-length negotiations, and plaintiffs' counsel must be experienced and have engaged in adequate discovery necessary to represent the class effectively. A strong initial presumption of fairness attaches to the proposed settlement when it is shown to be the result of this type of a negotiating process and when the number of objectors is small.

*Chatelain v. Prudential-Bache Sec. Inc.*, 805 F. Supp. 209, 212 (S.D.N.Y. 1992).

The Settlement in this Action was reached only after extended arm's-length negotiations between counsel for the parties, without a trace of collusion. Plaintiffs' Counsel, experienced in class action litigation, zealously represented the interests of the Class throughout negotiations. In a similar vein, Defendants are represented by highly regarded class action attorneys that skillfully negotiated on behalf of their client. Moreover, settlement negotiations were conducted through the use of two certified mediators, retired United States District Judge Layn Phillips and Jonathan Marks, who each attests that: (1) the conduct of counsel and party representatives was

professional and adversarial throughout the mediation discussions; (2) significant disagreements surfaced requiring the scheduling of additional mediation sessions, telephone meetings and caucuses; and (3) the negotiations were complex and difficult, and conducted at arm's-length and in good faith on both sides. Ex. A, Phillips Dec., at ¶10; Ex. B, Marks Dec. ¶¶ 20-24.  On June 7, 2011, the parties resumed the mediation, facilitated by Jonathan Marks, Esq.  Ex. B, Marks Dec. ¶15.  As such, the Settlement enjoys a presumption that it was reached without collusion and is fair, adequate and reasonable.  *See Strang v. JHM Mortgage Securities L.P.*, 890 F. Supp. 499, 501-02 (E.D. Va. 1995) ("[T]he Court is persuaded that Plaintiffs' counsel, with their wealth of experience and knowledge in the securities class action area, engaged in sufficiently extended and detailed settlement negotiations to secure a favorable settlement for the Class.").

> **D.     The Settlement Satisfies the Criteria For Approval**

The Seventh Circuit has suggested that in determining whether a class action settlement is fair, reasonable and adequate, and thus, whether the settlement should be approved, the district court should consider: (1) the strength of Plaintiffs' case compared to the amount of defendants' settlement offer;  (2) the stage of the proceedings at which the settlement was achieved; (3) the range of reasonableness of the settlement fund in light of the best possible recovery and in light of all the risks of litigation;  (4) the complexity, length, and expense of further litigation; (5) the reaction of the class to the settlement; and (6) the opinion of competent counsel.  *Gautreaux,* 690 F.2d at 631.  In this case, consideration of these relevant factors establishes that the Settlement is fair, reasonable, and adequate.

> **1.     The Strength of the Plaintiffs' Claims Compared to**
> **Settlement Weighs in Favor of Granting Final Approval**

"The first and most important consideration is the strength of the plaintiffs' case compared to the value of the settlement." *In re Lawnmower Engine Horsepower Mktg. & Sales*

*Practices Litig.*, 733 F. Supp. 2d 997, 1005 (E.D. Wis. 2010). In considering the strength of Plaintiffs' case, the Court should quantify "the net expected value of continued litigation to the class," by estimating "the range of possible outcomes." *In re AT&T Mobility Wireless Data Services Litig.*, 270 F.R.D. 330, 35 (N.D. Ill. 2010). In weighing this factor, the Court "should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1323 (S.D. Fla. 2005). Finally, "[b]ecause the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to the plaintiffs." *In re AT&T Mobility*, 270 F.R.D. at 347 (internal quotations omitted).

Here, the Settlement fairly reflects the risks of litigation and provides an immediate benefit to Eligible Class Members, without the risk of further litigation, expenses, and costs. Of importance, Defendants' counsel vigorously defended their clients' position and demonstrated their commitment to litigate to its conclusion. In particular, Defendants rely heavily on the recent U.S. Supreme Court decision in *Concepcion,* 131 S. Ct. 1740 to support their contention that this case must be arbitrated on an individual basis. In contrast, if Plaintiffs were to proceed to trial, they would face difficult factual and legal hurdles in this Action. For example, to attain the maximum recovery, Plaintiffs would have the burden of demonstrating by a preponderance of the evidence, *inter alia*, (1) a deceptive act or unfair practice, (2) causation, and (3) actual damages or aggrievement. *See Third Party Verification, Inc. v. Signaturelink, Inc.*, 492 F. Supp. 2d 1314, 1326 (M.D. Fla. 2007). Defendants as well contend that Plaintiffs' claims fail on the merits in that: (a) Defendants do not enroll Card Holders into Products without their consent; (b) Defendants clearly provide the terms of the DPP plan; (c) Defendants' Products are valuable; (d)

Defendants adequately represent the pricing of DPP; (e) Plaintiffs would be unable to certify the Class as individual issues predominate over common ones; and (f) Defendants are not required to disclose the pricing of DPP as finance charges under TILA. Additionally, absent the Settlement, there would have been significant additional resources and costs expended to prosecute the claims against the Defendants through trial and the inevitable appeals of any judgments. Defendants also believe that certain claims are barred by the statute of limitations.

Collectively, Defendants' Motions to Compel Arbitration could certainly lead to a stay of the case. Further, Plaintiffs would have to face the difficult, costly and time-consuming process of certifying the class. In addition, a jury could render a defense verdict at trial. Even though Plaintiffs believe that they would not be compelled to arbitrate their claims individually, that their claims have considerable merit, and that they would succeed at trial and beyond, the Settlement reached here offers a fair and reasonable compromise to the risk of litigating against the Defendants. Plaintiffs have opted for an immediate and tangible benefit for the Class, rather than unnecessarily expending a substantial amount of time, money and effort on a possibly fruitless endeavor. Plaintiffs entered into the Settlement only after carefully weighing the value of continuing the litigation. Complex class action litigation is inherently difficult and the outcome of any trial is uncertain. Although Plaintiffs are confident that they could present ample evidence against Defendants, Plaintiffs' Counsel is also aware of the risks confronting Plaintiffs in this type of complex litigation. *See Lipuma*, 406 F. Supp. 2d at 1323 ("[I]t has been held proper to take the bird in hand instead of a prospective flock in the brush.").

2. **The Stage of the Proceedings at Which Settlement was Achieved Supports Approval of the Settlement**

Approval of a settlement is proper where "discovery and investigation conducted by class counsel prior to entering into settlement negotiations was 'extensive and thorough.'" *Isby*, 75

F.3d at 1200; accord *Mangone v. First USA Bank*, 206 F.R.D. 222, 226 (S.D. Ill. 2001). "The lack of [formal] discovery prior to settlement, however, does not preclude a court from approving a settlement," especially where "counsel have conducted a significant amount of informal discovery and dedicated a significant amount of time and resources to advancing the underlying lawsuits." *In re AT&T Mobility Wireless Data Services Litig.*, 270 F.R.D. at 335. (internal citation omitted).

Here, in addition to the pre-trial investigation and discovery, as a condition of settlement, Plaintiffs insisted upon significant confirmatory discovery to supplement a voluminous paper discovery provided to Plaintiffs prior to the mediation. Such discovery was necessary for Plaintiffs to confirm allegations made by Defendants in mediation and ensure the reasonableness of the settlement terms and conditions for proposed class members. Settlement Counsel had already conducted an extensive factual investigation – including, interviewing witnesses, reviewing and analyzing defendants regulatory filings, financial reports, publicly available marketing materials, and client statements. Mediation discovery and confirmatory discovery permitted counsel to review and analyze thousands of pages of internal documents from Defendants and interviewed the product manager of the Products. *See* Joint Dec. at ¶ 23. These lengthy, and at times contentious, interviews served to confirm prior representations made by Defendants and allowed for a discussion and further examination of the information contained in the document production. *Id*. In particular, Plaintiffs' confirmatory discovery focused on Defendants' policies regarding marketing and enrollment of Plan members. *Id*. Plaintiffs were able to substantiate critical information provided by Defendants, including, for example, the average length of time Cardmembers remained enrolled in Products, and ultimately achieved an acceptable level of comfort with the accuracy of Defendants' statements upon which Plaintiffs

based the agreement reached at the mediation. *Id.* The litigation has been hard-fought. Specifically, counsel researched and analyzed all factors involved in Plaintiffs' claims as well as the possible defenses of Defendants. Plaintiffs also assessed the likelihood of prevailing on the Defendant's Motion to Compel Arbitration [Dkt. #85] and drafted an opposition that did not require filing due to settlement.

Plaintiffs further analyzed the difficulty of establishing damages and the risks of continued litigation. Plaintiffs' counsel, as well, had the expertise to assess the merits of settlement because of their experience in other cases against credit card companies regarding similar debt suspension / debt cancellation products. *See* Joint Dec. at ¶¶ 5, 26-29. As such, Plaintiffs' Counsel had sufficient information to act intelligently in negotiating the terms of the Settlement.

3.   **The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and In Light of All the Risks of Litigation Supports Approval of the Settlement**

The benefits of the Settlement justify approval. This $10.5 million all cash settlement will provide immediate tangible benefits to Eligible Class Members without incurring the additional costs and fees associated with further litigation. The courts agree that the determination of a "reasonable" settlement is not susceptible to mathematical precision, but rather, there must be "a range of reasonableness with respect to a settlement." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972). Above all, the Settlement provides for immediate payments and/or credits valued at a maximum of approximately $10.5 million, not just the hope of payment years down the road. *See In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1396, 1405 (E.D.N.Y. 1985), *modified on other grounds*, 818 F.2d 179 (2d Cir. 1987), *cert. denied*, 487 U.S. 1234 (1988). Given the obstacles and uncertainties attendant to this complex litigation,

this Settlement is well within the range of reasonableness, and is better than another distinct "possibility" – no recovery at all.

### 4. The Complexity, Expense, and Duration of Further Litigation Supports Approval of the Settlement

Final approval of a settlement is favored where "continued litigation would require resolution of complex issues at considerable expense and would absorb many days of trial time." *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1019 (N.D. Ill. 2000); accord *Isby*, 75 F.3d at 1199. Continued litigation against Defendants here would be of substantial duration and cost. First, as one of the largest issuers of consumer credit cards, Defendants can afford to finance expensive and protracted litigation. Second, plaintiffs face the potential risk that the case could be stayed and that all claims be arbitrated individually in light of the ruling in *Concepcion*, 131 S. Ct. 1740. Third, even if Plaintiffs were to succeed on the arbitration issue and the litigation were to continue beyond its present stage, significant additional time and resources would be necessary to complete discovery and pre-trial proceedings and trial preparation.[9] The trial itself would probably require multiple weeks, "with its attendant pretrial order, laborious winnowing of proof before trial, and post-trial skirmishing." *In re Gulf Oil/Cities Service Tender Offer Litig.,* 142 F.R.D. 588, 591 (S.D.N.Y. 1992). Finally, any trial judgment would still be subject to the continuing risks of litigation including appeals.[10]

---

[9] Avoiding the delay and risk of protracted litigation against a defendant is a valid reason for counsel to recommend, and for the court to approve a settlement. See *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 141, 424 (1968); see also *Haynes v. Shoney's, Inc*., No. 89-30093-RV, 1993 U.S. Dist. LEXIS. 749 at *15 (N.D. Fl. Jan 25, 1993) ("I am convinced that the relief afforded by the settlement is fair and reasonable when the expense, complexity and the duration of the proceedings which would be necessary to carry this matter through trial is measured against the likelihood of recovery by the plaintiffs … There is no dispute that further proceedings would be extremely lengthy, expensive and complex.").

[10] *See*, *e.g*., *Robbins v. Koger Properties, Inc.*, 116 F.3d 1441 (11th Cir. 1997)(reversing $81.3 million jury verdict for plaintiff after 7 years of litigation); *Kurz v. Philadelphia Elec. Co.*, 96 F.3d 1544 (3d Cir.

As such, "[t]he potential for this litigation to result in great expense and to continue for a long time suggests that settlement is in the best interests of the Class." *Slomovics v. All for a Dollar, Inc.*, 906 F. Supp. 146, 149 (E.D.N.Y. 1995). Thus, Settlement secures for the Class a substantial benefit undiminished by further litigation expenses, without the delay, risk and uncertainty of continued litigation.

### 5. The Reaction of the Class Supports Approval of the Settlement

The reaction of the members of a class to a proposed settlement is another factor used to determine whether a settlement is fair, adequate and reasonable. *Armstrong*, 616 F.2d at 314. A low percentage of objections will generally confirm the reasonableness of a settlement. *Mangone*, 206 F.R.D. at 227 ("In evaluating the fairness of a class action settlement, such overwhelming support by class members is strong circumstantial evidence supporting the fairness of the Settlement."). The relative lack of objectors challenging a class settlement favors a finding that the settlement is "fair and reasonable." *Am. Civil Liberties Union v. United States Gen. Servs. Admin.*, 235 F. Supp. 2d 816, 819 (N.D. Ill. 2002).

Out of 7.5 million Class members, only six (6) Class members have objected as explained more fully in Section VI. Collectively the objections and requests for exclusion represent a minuscule percentage of the Settlement Class. Thus, the Settlement enjoys the overwhelming approval of the Settlement Class and should be approved by this Court.

---

1996)(in ERISA class action, Third Circuit reversed judgment for plaintiffs in bench trial and entered judgment for all Defendant on all counts); *Scottish Heritable Trust, PLC v. Peat Marwick Main & Co.*, 81 F.3d 606 (5th Cir. 1996) (reversing verdict for plaintiffs on negligent misrepresentation claim against defendant auditor and dismissing claim), *cert. denied* 519 U.S. 869 (1996); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning, on the basis of 1994 Supreme Court opinion, jury verdict rendered at trial in 1988 for case filed in 1973); *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (multi-million judgment for plaintiffs reversed on appeal after 11 years of litigation).

6.    **The Opinion of Competent Counsel Favors
Approval of the Settlement**

Courts are entitled to rely on the opinion of competent class counsel that the settlement is fair, reasonable and adequate, where class counsel are qualified, and where discovery and settlement negotiations are extensive and thorough. *See Isby*, 75 F.3d at 1200; *see also Hispanics United v. Vill. of Addison*, 988 F. Supp. 1130, 1150 n. 6 (N.D. Ill. 1997) (there is a strong presumption of fairness where the settlement is "the result of arm's-length negotiations," and where plaintiffs' counsel are "experienced and have engaged in adequate discovery").

Here, Plaintiffs' Counsel has significant experience prosecuting class actions of similar size, scope, and complexity, and have been appointed class counsel in numerous class actions in the past. Furthermore, the Settlement was finalized only after the Parties' extensive informational exchanges and several months of arm's-length discussions and settlement negotiations. Plaintiffs' Counsel are confident that the relief afforded to the Class under the Settlement is an exceptional result in this litigation.[11]

---

[11] Additionally, the proposed settlement promotes the public interest because aggrieved class members are afforded an avenue of relief at no personal risk. It is in the public interest to resolve all such claims on a nationwide basis, rather than through duplicative and individual suits which would drain judicial resources while, at best, resolving only a tiny fraction of all claims. It is also in the public interest to resolve the dispute in a manner that tailors the nature and the extent of the relief of each class member to that class member's particular circumstances. As the Sixth Circuit has stated:

> Settlement agreements should . . . be upheld whenever equitable and policy considerations so permit. By such agreements are the burdens of trial spared to the parties, to other litigants waiting their turn before over-burdened courts, and to citizens whose taxes support the latter. An amicable compromise provides the more speedy and reasonable remedy for the dispute.

*Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir. 1976), *cert. denied* 429 U.S. 862 (1976). Viewed as a whole, the relevant criteria for finding a class action settlement fair and reasonable are plainly satisfied in this case. The Court should accordingly give its final approval to the Settlement.

## V.      THE NOTICE TO THE CLASS SATISFIED DUE PROCESS

Rule 23 requires that the Settlement Class receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); accord *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *see also In re AT&T Mobility*, 270 F.R.D. at 351. "Neither Rule 23 nor due process require 'receipt of actual notice by all class members;' rather, 'notice should be mailed to the last known addresses of those who can be identified and publication used to notify the others.'" *Mangone*, 206 F.R.D. at 231-32 (internal citations omitted).

The Notice [Dkt. # 16-5], the form of which has already been approved by this Court, was mailed directly to approximately 10.2 million recipients informing potential class members, and, as explained in ¶¶30-35 of the Joint Declaration, the Notice provided to the class members was sufficient to satisfy the requirements of due process because it described "the substantive claims . . . [and] contain[s] information reasonably necessary to make a decision to remain a class member and be bound by the final judgment." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1104-05 (5th Cir. 1977).

 As ordered by the Court, the Settlement Administrator, mailed the Notice to each Class Member whose interests *would* be affected by the proposed settlement, who was identified from the records maintained by Defendants. *See* Hodne Dec., at ¶8. The Notice program also included Internet placement and publication of Notice in the January 19, 2012 edition of  USA TODAY. *Id.* at ¶¶ 10-12.

## VI.      THE PLAN OF ADMINISTRATION AND DISTRIBUTION IS FAIR AND REASONABLE AND SHOULD BE APPROVED

Approval of a plan of allocation of settlement proceeds in a class action under Rule 23 is "governed by the same standards of review applicable to approval of the settlement as a whole:

the plan must be fair, reasonable and adequate." *In re Oracle Sec. Litig.*, [1994-1995 Transfer Binder] Fed. Sec. L. Rep. (CCH) P 98,355 at 90,446 (N.D. Cal. Jun. 18, 1994); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284-85 (9th Cir. 1992). An allocation formula need only have a reasonable, rational basis, particularly if recommended by "experienced and competent" class counsel. *White v. NFL*, 822 F. Supp. 1389, 1420-24 (D. Minn. 1993), *aff'd* 41 F.2d 402 (8th Cir. 1994); *see also In re Oracle*, [1994-1995 Transfer Binder] Fed Sec. L. Rep. (CCH) at 90,446 ("A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable.").

The plan of allocation, referred to as the Plan of Administration and Distribution [*see* Settlement Agreement at 10 - 14, Dkt. # 148-1], was formulated by counsel, in consultation with their respective advisors, ensuring its fairness and reliability. Plaintiffs' Counsel acted fairly in developing the Plan of Administration and Distribution. Accordingly, Plaintiffs' Counsel respectfully submits that the proposed Plan of Administration and Distribution is fair and reasonable and should be approved by the Court.

## VII.    THE OBJECTIONS BY CLASS MEMBERS SHOULD BE OVERRULED

Only 6 out of approximately 10.2 million Class Members have objected to the Settlement. *See* Hodne Dec., at ¶13.   All of these objections have been provided to Plaintiffs' Counsel, the Settlement Administrator or filed with the Court. *See id.*   Plaintiffs' Counsel appreciates the comments and concerns outlined in this small number of objections, but none of them counsel against final approval.  The Objectors did not offer reasonable (or any) alternatives to address any alleged weaknesses in the Settlement.  "General objections without factual or legal substantiation carry little weight."  4 NEWBERG ON CLASS ACTIONS (4th ed. 2002) § 11.58. For these and the specific reasons below, the Settlement should be given final approval despite

the presence of a small number of Objectors (at least one of whom is a professional objector who has lodged the same generic complaints in other recent settlements).[12]

   1.   **Objector Archer:**  Julie-Ann Archer objected on the basis that she felt she had been treated fairly by Discover.[13]

   Similarly, Objectors **Cutler** and **Stoltenberg** expressed satisfaction with Discover and the products they had purchased, although Mr. Cutler stated that one of the claims in the case presented "legitimate cause for rectification".  Ex. D, Joint Dec. ¶50.  Mr. Stoltenberg (who acknowledged that he hadn't read the entire Settlement) stated that it was consumers' responsibility to decline services they did not want when offered, but did not appear to understand that absence of consent was the heart of an issue in the lawsuit, namely, Discover's practices of imposing the Products on consumers without their consent.  *Id.*

   2.   **Objector Dixon:**  Donna Dixon asserted that the Class Member recoveries were too small per Class Member. [14]  Objectors **Cutler** and **Gordon** (who noted she had paid much more than $60 for the Product) made similar points. As the Seventh Circuit has explained:

> To the extent that objecting members complain that the agreed entry does not go far enough in alleviating [plaintiffs' concerns] we reply that the "essence of settlement is compromise."  A settlement will not be rejected solely because it does not provide a complete victory to the plaintiffs.

*Isby,* 75 F.3d at 1200 (internal citations omitted).

---

[12] Some of the Objections overlap. To avoid duplication, Plaintiffs address the Objectors in alphabetical order but do not separately discuss each Objector if his or her Objection mirrors a prior Objection.

[13] Ms. Archer also discussed how "credit card companies have mastered the art of making money through lending people money to make purchases that they can or cannot afford," and contended that credit should not be extended to individuals in precarious financial circumstances. Archer Obj., at 3 (attached as Joint Dec. ¶48).   The latter complaint is outside the scope of this lawsuit.

[14] Ms. Dixon also complained about an unrelated class action lawsuit in which she had received notice involving movers of household goods.   Ms. Dixon also felt the instructions for filing an objection were confusing due to the standard language in the Notice telling Class Members not to contact the Court directly.   However, she acknowledged that she was able to get instructions by logging onto the case website.

Specifically, whereas "inadequacy of the fund may be attacked on the basis that the circumstances indicate that the plaintiff's likelihood of recovery is greater than suggested by the proponents, or that the potential recovery of damages has been undervalued and therefore underestimated," general expressions of desire for more money do not in themselves weigh against final approval.  4 NEWBERG ON CLASS ACTIONS, *supra*, § 11:58.  None of the Objectors offered specific legal support for the proposition that the Settlement amount in this case was too small given the inherent uncertainties of litigation.  It is "well-settled that the recovery in a class action settlement may amount to less than the potential recovery by the class."  *Berger v. Xerox Ret. Income Guar. Plan*, 231 F. Supp. 2d 804, 820 (S.D. Ill. 2002).  Thus, the objection that the Settlement was too small, which was the primary overall collective objection, is not a reason to deny final approval.

    **3.**    **Professional Objector Petrus:**  Aaron Petrus, who may fairly be characterized as a professional objector, has (as in other cases discussed below, albeit unsuccessfully), complained that the attorneys' fees are too large and that the Settlement presents conflicts because different types of credit card add-on products are resolved in one suit.

    **a.**    **Considerations Specific to Professional Objectors**

    The Seventh Circuit has observed how an objector "might intervene and cause expensive delay in the hope of getting paid to go away."  *Vollmer v. Selden*, 350 F.3d 656, 660 (7th Cir. 2003).  As one court explained:

> [P]rofessional objectors can levy what is effectively a tax on class action settlements, a tax that has no benefit to anyone other than to the objectors.  Literally nothing is gained from the cost: Settlements are not restructured and the class, on whose behalf the appeal is purportedly raised, gains nothing.

*Barnes v. FleetBoston Fin. Corp.*, 2006 U.S. Dist. LEXIS 71072, *3-4 (D. Mass 2006).  As a result, "federal courts are increasingly weary of professional objectors."  *O'Keefe v. Mercedes-*

*Benz USA, LLC*, 214 F.R.D. 266, n.26 (E.D. Pa. 2003); *see also In re Initial Public Offering Sec. Litig.* ("*In re IPO Sec. Litig.*"), --- F. Supp. 2d ---, 2010 WL 2884794, at *3 (S.D.N.Y. July 20, 2010) ("I concur with the numerous courts that have recognized that professional objectors undermine the administration of justice by disrupting settlement in the hopes of extorting a greater share of the settlement for themselves and their clients.").

Mr. Petrus' objections in other cases have been unsuccessful. He was among the group of objectors recently found to have "misconstrue[d] the requirements of Rule 23." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 306 (3d Cir. 2011) (en banc) (Petrus objection); *Milliron v. T-Mobile USA, Inc.*, 2009 U.S. Dist. LEXIS 101201, at *17 & n.4 (D.N.J. Sept. 10, 2009) (finding that Mr. Petrus' objection lacked merit. This history, and his status as a professional objector, warrant a skeptical treatment of Mr. Petrus' objections. Plaintiffs nonetheless address the substance of his objection to the settlement below.

### b. Professional Objector Petrus' Complaints About Attorneys' Fees and Costs Are Not Well-Founded

Mr. Petrus asserts that Plaintiffs' Plaintiffs' Memorandum of Law in Support of an Award of Attorneys' Fees, Reimbursement of Expenses, and Service Award, (Dkt. No. 158) is unsupported by the percentage of the fund or a lodestar cross-check, but does not explain how this is so. In fact, exactly the opposite is true. Both methods of calculating attorneys' fees support Plaintiffs. As explained at length in the Fee Request, Plaintiffs are seeking 30.9% of the monetary component of the Settlement (which does not reflect the injunctive relief), a percentage just slightly under the 33.3% amount that Courts in this Circuit regularly award, and that reflects negative lodestar. Dkt. No. 158 at 6-13. Plaintiffs also seek their reasonably-incurred expenses.

While Mr. Petrus also objects that the Notice(s) did not set forth the actual expenses, this ignores: (a) that the Notices (summary and long-form) all stated that Plaintiffs would seek no

more than $3.5 million in attorneys' fees and expenses; and (b) Plaintiffs submitted their Fee Request, which had specific expense information, *before* the close of the Objection deadline. Therefore, Mr. Petrus' Objection is misplaced. *See generally In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 102-104 (N.D. Ill. 2011) (overruling objection; holding that it is sufficient for a class notice to state that attorneys would be applying for reimbursement of expenses without assigning a dollar amount and noting that there, as here, the plaintiffs had filed their fee brief prior to the close of the objection deadline).

### c. Professional Objector Petrus' Claim of "Conflicts" Is Not Well-Founded

Second, Mr. Petrus argues that sub-classes should have been created to avoid a purported conflict of interest between and among Class Members holding each of the four Discover products.[15] This same argument was raised by Mr. Petrus—and expressly rejected—in *Sullivan*. The *en banc* panel in *Sullivan* noted "the potential drawbacks of subclassing, including the potential 'Balkanization of the class action,' and creation of 'a huge obstacle to settlement if each subclass has an incentive to hold out for more money,'" *id.* at 326 (citations omitted), and held that no intra-class conflict exists where "all putative members experienced injury caused by [the defendant], all sought recovery for overpayment caused by [defendant's] behavior, and all shared

---

[15] The Products are not mutually exclusive. A Class Member may be enrolled in any combination of the Products, and can recover in connection with as many of the Products as he or she was enrolled in. The Settlement provides the same type of relief in connection with each Product (i.e. recovery based on unauthorized imposition of the Product and dissatisfaction deriving from deceptive marketing). Benefits administration is only relevant to Payment Protection, so that is why that Product also carries a third category of relief. Moreover, the Products cost different amounts of money, which justifies different recoveries. Mr. Petrus does not point to any specific infirmities with the recovery amounts in absolute or relative terms. A plan of allocation, like the rest of the Settlement, is subject to rules of reasonableness and fairness; that there may be other ways to fairly allocate recovery is not a barrier to final approval. *See, e.g., Sullivan*, 667 F.3d at 328 ("[c]ourts generally consider plans of allocation that reimburse class members based on the type and extent of their injuries to be reasonable"); *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 514-15 (S.D.N.Y. 1996) (damages distinction supports a finding of inadequacy only in the rarest of cases where a conflict is "so palpable as to outweigh the substantial interest of every class member in proceeding with the litigation").

common interests in establishing damages and injunctive relief." *Id.* at 327. This is precisely the case here. All Class Members' claims arise from Discover's imposition of fees on Class Members through improper related practices. Under the Settlement, all Class Members share a common interest in receiving the same core relief—adequate injunctive relief to end improper practices (which relief generally applies to all the Products), and fair compensation for the charges already incurred. Nor has Mr. Petrus identified any actual conflicts or otherwise stated how the Class Representatives—who have held the four Discover products at issue (Dkt. No. 148-2, at ¶¶ 54, 55, 57, 60, 63, 67, 71, 75, 78, 81, 84, 85, 89, 92, 95, 99-102, 113, 116, 121, 127) —and their counsel are inadequate to represent Class Members holding those same products. Plaintiffs have vigorously pursued their claims through qualified counsel and secured a fair Settlement that benefits all Class Members. Mr. Petrus' Objection should be overruled.[16]

For reasons set forth in this brief and that can be fully addressed at the Final Approval Hearing scheduled before Your Honor on May 8, 2012, none of these objections warrant rejection of the Settlement sought.

## VIII. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Class Action Settlement be finally approved, and the objections thereto be overruled.

---

[16] Mr. Petrus also notes that Plaintiffs have sought modest service payments for Class Representatives, but it is unclear whether this is an Objection. As addressed in the Fee Request, this Court supports the award of service awards to Class Representatives. Finally, Mr. Petrus speculates that Discover employees may be among those in the large class here, but offers no specific reason to think that *specific* alleged wrongdoers are taking any money from the Class, especially given the claim form requirement that Class Members confirm the Products were imposed on them, that they were mislead or dissatisfied with the Products, or (in the case of Payment Protection) that they were denied benefits, and the fact that the Settlement Class Complaint excludes Defendants. Dkt. No. 148-2, ¶ 134 (class exclusions).

Dated: April 24, 2012


\_\_/s/ Diane E. Sammons_____
Diane E. Sammons
Bruce H. Nagel
Jay J. Rice
NAGEL RICE, LLP
103 Eisenhower Parkway, Suite 103
Roseland, New Jersey 07068
Tel: (973) 618-0400
Fax: (973) 618-9194
dsammons@nagelrice.com
bnagel@nagelrice.com
jrice@nagelrice.com

**Class Counsel for the Proposed Class**

Marvin Alan Miller
MILLER LAW LLC
115 South LaSalle Street
Suite 2910
Chicago, IL 60603
Tel: (312) 332-3400
Fax: (312) 676-2676
mmiller@millerlawllc.com

**Local Counsel for the Proposal Class**


David S. Paris
Ross Schmierer
PARIS ACKERMAN & SCHMIERER LLP
101 Eisenhower Parkway
Roseland, NJ 07068
Tel: (973) 228-6667
Fax: (973) 629-1246
david@paslawfirm.com
ross@paslawfirm.com

**Additional Plaintiffs' Counsel**

\_\_/s/ Brian P. Murray_____
Brian P. Murray
Gregory Linkh
MURRAY FRANK LLP
275 Madison Avenue, Suite 801
New York, NY 10016
Tel: (212) 682-1818
Fax: (212) 682-1892
bmurray@murrayfrank.com
glinkh@murrayfrank.com

**Class Counsel for the Proposed Class**


John J. Carey
Francis J. "Casey" Flynn, Jr.
Tiffany M. Yiatras
CAREY DANIS & LOWE
8235 Forsyth Boulevard, Suite 1100
St. Louis, MO 63105-1643
Tel: (314) 725-7700
Fax: (314) 721-0905
jcarey@careydanis.com
casey@jefflowepc.com
tyiatras@caseydanis.com

**Additional Plaintiffs' Counsel**


J. Allen Carney
Randall K. Pulliam
CARNEY WILLIAMS BATES BOZEMAN &
PULLIAM, PLLC
11311 Arcade Drive
Little Rock, Arkansas 72212
Tel: (501) 312-8500
Fax: (501) 312-8505
acarney@carneywilliams.com
rpulliam@carneywilliams.com

**Additional Plaintiffs' Counsel**

Brent Walker
CARTER WALKER, PLLC
2171 West Main
Suite 200
Post Office Box 628
Cabot, AR 72023
Tel:  (501) 605-1346
bwalker@carterwalkerlaw.com

**Additional Plaintiffs' Counsel**

Rachel Geman
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Tel:  (212) 355-9500
Fax:  (212) 355-9592
*rgeman@lchb.com*

**Additional Plaintiffs' Counsel**

Ruben Honik
GOLOMB & HONIK, P.C.
1515 Market Street
Suite 1100
Philadelphia, PA 19102
Tel:  (215) 985-9177
Fax:  (215) 985-4169
rhonik@golombhonik.com

**Additional Plaintiffs' Counsel**

John B. White, Jr.
Samuel R. Bass, II
HARRISON WHITE SMITH AND
COGGINS
P.O. Box 3547
Spartanburg, SC 29304
Tel:  (864) 585-5100
Fax:  (864) 542-2993
jwhite@spartanlaw.com
sbass@spartanlaw.com

**Additional Plaintiffs' Counsel**

Steven A. Owings
OWINGS LAW FIRM
1400 Brookwood Drive
Little Rock, Arkansas 72202
Tel:  (501) 661-9999
Fax:  (501) 661-8393
sowings@owingslawfirm.com

**Additional Plaintiffs' Counsel**

Marc Godino
GLANCY BINKOW & GOLDBERG
1925 Century Park East
Suite 2100
Los Angeles, CA 90067
Tel:  (310) 201-9150
Fax:  (310) 201-9160
mgodino@glancylaw.com

**Additional Plaintiffs' Counsel**

Kevin S Landau
Brett Cebulash
TAUS CEBULASH & LANDAU LLP
80 Maiden Lane
Suite 1204
New York, NY 10038-4811
Tel:  (212) 931-0703
klandau@tcllaw.com
bcebulash@tcllaw.com

**Additional Plaintiffs' Counsel**

William Craft Hughes
HUGHES ELLZEY
Galleria Tower One
2700 Post Oak Boulevard, Suite 1120
Houston, TX 888-350-3931
Tel:  (888) 350-3931
Fax:  (888) 995-3335

**Additional Plaintiffs' Counsel**

B. J. Wade
DEAL, COOPER & HOLTON, PLLC
296 Washington Avenue
Memphis, TN 38103
Tel: (901) 523-2222
bwade@dchlaw.com

**Additional Plaintiffs' Counsel**

Benjamin R Picker
MCCAUSLAND KEEN & BUCKMAN
259 N. Radnor-Chester Road
Radnor Court, Suite 160
Radnor, PA 19087
Tel: (610) 341-1000
Fax: (610) 341-1099
bpicker@mkbattorneys.com

**Additional Plaintiffs' Counsel**

Fletcher V. Trammell
Bailey Perrin Bailey
440 Louisiana, Suite 2100
Houston, Texas 77002
ftrammell@bpblaw.com
(713) 425-7100 Telephone
(713) 425-7101 Facsimile

**Additional Plaintiffs' Counsel**

## CERTIFICATE OF SERVICE

I hereby certify that, on April 24, 2012, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send notification of such filing to all attorneys of record. I also caused a copy of the foregoing document to be mailed to each of the six objectors.

/s/ Brian P. Murray
