**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: DISCOVER PAYMENT PROTECTION PLAN MARKETING AND SALES PRACTICE LITIGATION | CASE NO. 1:10-cv-06994-JWD<br><br>Honorable Virginia M. Kendall |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**MOTION TO DIRECT OBJECTOR TO POST APPEAL BOND**

**I.     INTRODUCTION**

Named plaintiffs Devavani Conroy, Renee Walker, Jason Chan, Robert Ackerman, Michele Kraynak, Shawn Irvine, Anthony DeMarco, Marti Kelmer, Jose Cruz, Robert Hibbs, Jason Hart, Tammy Marsh, Charles Triplett, Kathleen Callahan, Brian Boyce, Ulonda Carter, Diane Alexander, and Karin Sack, on behalf of the certified Class (collectively "Plaintiffs"), who brought these actions against Discover Financial Services for their alleged improper marketing, enrollment, and administration of four fee-based products, respectfully submit this memorandum of law in support of Plaintiffs' motion, pursuant to Rule 7 of the Federal Rules of Appellate Procedure, for an order requiring objector Aaron Petrus ("Objector") to post an appeal bond in the amount of $25,000 to cover a portion of the anticipated costs and attorneys' fees to be incurred in connection with Objector's appeals of the Final Order and Judgment ("Final Order and Judgment") [Dkt. #177].

On May 10, 2012, Judge Darrah entered the Final Order and Judgment approving the settlement of the Action as a "fair, reasonable, and adequate settlement as to all Settlement Class members in accordance with Rule 23 of the Federal Rules of Civil Procedure."

In so doing, Judge Darrah overruled an objection by Petrus who complained that the attorneys' fees were too large and that the Settlement presented conflicts because allegations concerning different types of credit card add-on products were all resolved in one suit. Notwithstanding, Objector filed an appeal of the Final Order and Judgment. It is anticipated that this appeal will raise the same arguments considered and rejected by Judge Darrah. As Objector makes the same unsuccessful arguments that others have repeatedly made in objecting to other class action settlements, it is unlikely Objector will succeed in the Seventh Circuit Court of Appeals.[1] Defending the appeal is both time-consuming and expensive. Distribution of the settlement proceeds to Class members will be delayed for months, if not years, by this appeal, resulting in substantial monthly expenses incurred by the Settlement and Claims Administrator. Moreover, as will be shown herein, Objector is a "professional objector," who has previously been represented by an attorney who has been the subject of scathing judicial orders admonishing the practice of professional objectors. Indeed, upon information and belief, Objector has family ties to the attorneys' law firm. Rather than objecting to this settlement for a legitimate reason, Plaintiffs believe that Objector is seeking to extract money in exchange for dropping his appeal.

These facts make the risk of non-payment significant. Accordingly, Plaintiffs request this Court enter an order requiring Objector to post a $25,000 appeal bond.

---

[1] *See McDonald v. Chicago Milwaukee Corp.*, 565 F.2d 416, 428 (7th Cir. Ill. 1977) ("in reviewing the appropriateness of the settlement approval, we should intervene only upon a clear showing that the trial court was guilty of an abuse of discretion").

## II.    FACTUAL BACKGROUND

Out of a mailing of over 5 million notices, a mere 6 objections to the Settlement were filed with the district court, and Objector filed the only appeal. The objections included arguments that: (a) notice of the settlement was insufficient; (b) the attorneys' fees were excessive; and (c) the settlement agreement was unfair, inadequate, and unreasonable. After carefully considering the issues raised in these objections, Judge Darrah specifically overruled all objections and found among other things that: (1) the Stipulation and Agreement of Class Action Settlement (the "Agreement") "[was] the product of arm's-length settlement negotiations," and (2) "The Court hereby finally approves the Settlement Agreement and the Settlement contemplated thereby, and finds that the terms constitute, in all respects, a fair, reasonable, and adequate settlement as to all Settlement Class members in accordance with Rule 23 of the Federal Rules of Civil Procedure...." *See* Final Order and Judgment dated May 10, 2012, [Doc. #177, ¶¶ 3 and 7.]

Objector Aaron Petrus has recently objected to a similar final order approving a class action's settlement agreement. In that action, Objector was represented by Christopher A. Bandas, of the Bandas Law Firm in Corpus Christi, Texas.[2] (Declaration of Randall K. Pulliam in Support of Plaintiffs' Motion to Direct Objector to Post Bond ("Pulliam Dec.") at ¶ 2.) Bandas is a Texas lawyer well known for his practice of routinely filing objections in class action settlements across the country. *See* Order Denying Objections to the Settlement and Fees and the Motion to Intervene and for Pro Hac Vice Admission ("Order Denying Objections"), *Brown, et al. v. Wal-Mart Stores, Inc., et al.*, Circuit Court of Rock Island County, Illinois, Oct. 29, 2009,

---

[2] *See Sullivan v. DB Invs., Inc.,* 667 F.3d 273 (3d Cir. 2011).

p.1. (Pulliam Dec. Exhibit C.) Further, on information and belief, Objector is related to Mr. Bandas's office manager, Ms. Jan Petrus. (Pulliam Dec. at ¶ 3.)

As Petrus is a professional objector and his appeal lacks merit, in order to ensure that the costs of the appeal are recoverable, Plaintiffs ask that Objector file an appeal bond with the Court.

## III.   LEGAL ANALYSIS

### A.   The Court Has Broad Discretion to Require an Appeal Bond

Rule 7 of the Federal Rules of Appellate Procedure authorizes district courts, in civil cases, to "require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." Fed. R. App. P. 7.[3] As such, a district court has broad discretion in considering whether to require an appellant to post an appeal bond. *See Walton v. City of Carmel*, 2008 U.S. Dist. LEXIS 45507, at *8 (S.D. Ind. 2008) (noting that "[w]hether to require a bond...is a matter wholly within the district court's discretion").

The main purpose of an appeal bond "is to protect an appellee against the risk of nonpayment by an unsuccessful appellant." *In re: Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d 289, 292 (S.D.N.Y. 2010); *see also Adsani*, 139 F.3d at 75 (recognizing the purpose of Rule 7 is to protect appellees brought into appeals courts from the risk of nonpayment); *Page v. A.H. Robins, Co., Inc.*, 85 F.R.D. 139, 139-40 (E.D. Va. 1980) ("the purpose[ ] of an appeal bond is to

---

[3] There is no constitutional right to an appeal. *Heike v. United States*, 217 U.S 423, 428 (1910) ("The appellate jurisdiction in the Federal system of procedure is purely statutory."); *Adsani v. Miller*, 139 F.3d 67, 76-77 (2nd Cir.1998) ("The right to appellate review in federal court is conferred by statute alone."). Therefore, the requirement that Objector post a bond pursuant to Rule 7, which ensures that the parties and their respective counsel are compensated promptly on affirmance for all costs they incur in connection with the appeal, is not an impermissible condition to appeal. *See Adsani*, 139 F.3d at 77 (recognizing that requiring "the posting of security for expenses, including counsel fees, which may be incurred on appeal" does not offend "principles of Equal Protection or Due Process fairness" (internal quotations omitted)).

provide an appellant security for the payment of such costs as may be awarded to him in the event that the appellant is unsuccessful in his appeal"). As such, numerous courts have held that appeal bonds are appropriate to ensure payment of costs of the appeal, especially when the appeal bears indicia of frivolousness or appellants have engaged in a course of vexatious or bad faith conduct during the litigation. *Int'l Floor Crafts, Inc. v. Dziemit*, 420 Fed. Appx. 6, 19 (1st Cir. 2011) (affirming district court's order requiring a $10,000 appeal bond); *Tri-Star Pictures, Inc. v. Unger*, 32 F. Supp.2d 144, 148 (S.D.N.Y. 1999) (ordering $50,000 bond); *see In re: NASDAQ Mkt-Makers Antitrust Litig.*, 187 F.R.D. 124, 128 (S.D.N.Y. 1999) (primary purpose of appeal bond is to "guarantee that the appellee can recover from the appellant the damages caused by the delay incident to the appeal"). Accordingly, this Court has broad discretion to compel Objector to post an appeal bond to ensure that Appellees' costs are paid promptly in the event Objector's appeal fails.[4]

**B.     Appeal Bonds are Routine in Class Actions and Serve an Important Function**

In considering the standard for issuance of an appeal bond, one court in this circuit has mentioned that perhaps "only one element must be met before a bond may be required—namely, that the district court finds a bond 'necessary to ensure' payment of costs on appeal." *In re: Lawnmower Engine Horsepower Marketing & Sales Practices Litig.*, MDL No. 08-1999, 2010 U.S. Dist. LEXIS 123761, at *17 (E.D. Wisc. 2010).

---

[4] Failure to execute an appeal bond is grounds for dismissal of the appeal. *See* Fed. R. App. P. 3(a)(2) ("An appellant's failure to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but is ground only for the court of appeals to act as it considers appropriate, including dismissing the appeal."); *In re: Cardizem CD Antitrust Litig.*, 391 F.3d 812, 815 (6th Cir. 2004) (stating "[a] litigant cannot ignore an order setting an appeal bond without consequences to her appeal" and dismissing the appeal for appellant's failure to timely post an appeal bond).

Courts in surrounding jurisdictions have concluded that a district court may consider other factors, which are not exhaustive: (a) the appellant's financial ability to post a bond; (b) the risk that the appellant would not pay appellee's costs if the appeal fails; (c) the merits of the appeal; and (d) whether the appellant has shown any bad faith or vexatious conduct. *See, e.g., In re: Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d at 292; *Watson v. E.S. Sutton, Inc.*, No. 02 Civ. 2739 (KMW), 2006 U.S. Dist. LEXIS 88415, at *6-7 (S.D.N.Y. Dec. 6, 2006). Consideration of these factors weighs in favor of an appeal bond in class actions where, as here, the likelihood of success on appeal is small; facts suggest Objector's motives are nefarious; and such an appeal has the effect of significantly delaying distribution of the settlement to the Class. *See In re: Cardizem CD Antitrust Litig.,* 391 F.3d 812, 815 (6th Cir. 2004) (including $123,429 in the appeal bond for "incremental administration costs" due to a projected six-month delay); *In re: Compact Disc Minimum Advertised Price Antitrust Litig.*, MDL No. 1361, 2003 U.S. Dist. LEXIS 25788, at *5-7 (D. Me. Oct. 7, 2003) (concluding that costs of delay or disruption of settlement may be included in a Rule 7 bond and granting $35,000 appeal bond); *In re Pharmaceutical Indus. Average Wholesale Price Litig.*, 520 F. Supp. 2d 274 (D. Mass. 2007) (recognizing that requiring an appeal bond ensures that a class "will not be injured or held up by spoilers" and imposing appeal bond of $61,000 for costs attributable to delay in distribution); *In re NASDAQ*, 187 F.R.D. at 128-29 (imposing appeal bond of $101,500 for costs including damages resulting from the delay and/or disruption of settlement administration); *In re Wal-Mart Wage and Hour Employment Practices Litig.*, 2010 U.S. Dist. LEXIS 21466, at *18-19 (D. Nev. March 8, 2010) (imposing a $500,000 appeal bond per objector including administrative delay costs and interest costs).

### C. Petrus' Status as a "Professional Objector", His Meritless Arguments, and the Risk of Non-Payment Warrant an Appeal Bond in this Case

#### i. Petrus is a Professional Objector Seeking to Thwart Distribution.

Aaron Petrus, who may fairly be characterized as a professional objector, has (as in other cases), complained that the attorneys' fees are too large and that the Settlement presents conflicts because different types of credit card add-on products are resolved in one suit. See *Sullivan v. DB Invs., Inc.,* 667 F.3d 273 (3d Cir. 2011) (en banc) (Petrus objection); *Milliron v. T-Mobile USA, Inc.,* 2009 U.S. Dist. LEXIS 101201 (D.N.J. Sept. 10, 2009) (Petrus objection). Mr. Petrus' objections in other cases have been unsuccessful. He was among the group of objectors recently found to have "misconstrue[d] the requirements of Rule 23." *Sullivan,* 667 F.3d at 306; *Milliron*, 2009 U.S. Dist. LEXIS 101201, at *17 & n.4 (finding that Mr. Petrus' objection lacked merit).

In *Sullivan*, Petrus was represented by by Christopher A. Bandas, of the Bandas Law Firm in Corpus Christi, Texas.[5] (Pulliam Dec. at ¶ 2) Mr. Bandas "[is] a Texas lawyer well known for his practice of routinely filing objections in class action settlements across the country." Order Denying Objections, at 1. (Order attached to Pulliam Dec. as Exhibit A.) That court went on say: "Bandas is a professional objector who is improperly attempting to 'hijack' the settlement of this case from deserving class members and dedicated, hard working counsel, solely to coerce ill-gotten, inappropriate and unspecified 'legal fees.'" *Id*. at p.2. The Order Denying Objections clearly lays out numerous examples of Bandas' objections in South Carolina, Missouri, Iowa, California, Arkansas, and Oklahoma. *Id*. at pgs. 2-4. This is yet another example of Mr. Bandas "working for [his] own personal benefit and not for the benefit of this Class." *Id*. at 2.

---

[5] *See Sullivan v. DB Invs., Inc.,* 667 F.3d 273 (3d Cir. 2011).

Finally, it is likely that Objector Petrus is related to the Office Manager in Bandas' law firm. In Petrus' objection to the settlement, he lists his address "c/o Jan Petrus, 120 Woodhaven, Ingleside, TX 78362" [Dkt. # 163]  Jan Petrus is listed  on the website for the Bandas Law Firm as the firm's Office Manager.  (A true copy of the website page listing Ms. Petrus is attached to the Pulliam Dec. at Exhibit B).[6]  Petrus' previous unsuccessful objections and his connections to the Bandas Law Firm support the conclusion that Petrus is a professional objector engaged in a deliberate process to hold up the settlement to the Class in exchange for a fee.

### ii.    Considerations Specific to Professional Objectors.

The Seventh Circuit has observed that an objector "might intervene and cause expensive delay in the hope of getting paid to go away."  *Vollmer v. Selden,* 350 F.3d 656, 660 (7th Cir. 2003).  As one court explained:

> [P]rofessional objectors can levy what is effectively a tax on class action settlements, a tax that has no benefit to anyone other than to the objectors.   Literally nothing is gained from the cost: Settlements are not restructured and the class, on whose behalf the appeal is purportedly raised, gains nothing.

*Barnes v. FleetBoston Fin. Corp*., 2006 U.S. Dist. LEXIS 71072, at *3-4 (D. Mass 2006). These "professionals" can "make a living simply by filing frivolous appeals," especially if the settlement is sizeable.   *Id.* at *3. As a result, "federal courts are increasingly weary of professional objectors."  *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, n.26 (E.D. Pa. 2003).  Acknowledging the growing concern posed by such professional objectors, the Federal Judicial Center advised courts to "[w]atch out…for canned objections from professional objectors who seek out class actions to extract a fee by lodging generic, unhelpful protests."

---

[6] Even if Objector Petrus  has no familial ties to Jan Petrus of the Bandas Law Firm, his history of template objections in other cases which are similar in nature to the objections raised here, still support the issuance of a bond in the instant case.

Federal Judicial Center, *Managing Class Action Litigation: A Pocket Guide for Judges*, at 15 (2d ed. 2009). These objectors "are a pariah to the functionality of class action lawsuits, as they maraud proposed settlements—not to assess their merits on some principled basis—but in order to extort the parties, and particularly the settling defendants, into ransoming a settlement that could otherwise be undermined by a time consuming appeal process." *Snell v. Allianz Life Ins. Co. N.A.*, No. 97-2784, 2000 WL 1336640, at *9 (D. Minn. Sept. 8, 20100>

This history, and his status as a professional objector, warrant a skeptical treatment of Mr. Petrus' objections. Plaintiffs nonetheless address the substance of his positions below.

### iii. Professional Objector Petrus' Complaints About Attorneys' Fees and Costs Are Not Well-Founded.

Mr. Petrus asserts that Plaintiffs' Fee Request (Dkt. # 158) is unsupported by the percentage of the fund or a lodestar cross-check calculation, but does not explain how this is so. In fact, exactly the opposite is true. Both methods of calculating attorneys' fees support Plaintiffs. As explained at length in the Fee Request, Plaintiffs are seeking 30.9% of the monetary component of the Settlement (which does not reflect the injunctive relief), a percentage just slightly under the 33.3% amount that Courts in this Circuit regularly award, and one that reflects a substantial negative lodestar. Dkt. # 158 at 6-13. [7] Plaintiffs also seek their reasonably-incurred expenses.

---

[7] The reasonableness of the awarded attorneys' fees is further underscored by the resources and time Plaintiffs' counsel devoted to the prosecution and settlement of this action, which included an extensive factual investigation, interviewing numerous witnesses, reviewing thousands of documents, a damages analysis, propounding discovery requests, negotiating at arm's length a favorable Settlement for the Class, and engaging in confirmatory discovery. The awarded attorneys' fees are reasonable and proper, especially when considering that this case involves over 5 million class members and a formidable Defendant represented by highly competent counsel.

Mr. Petrus objection that the Notice(s) did not set forth the actual expenses ignores that (a) the Notices (summary and long-form) all stated that Plaintiffs would seek no more than $3.5 million in attorneys' fees and costs and (b) Plaintiffs submitted their Fee Request, which had specific expense information, before the close of the Objection deadline. Therefore, Mr. Petrus' Objection is misplaced. See generally *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 102-104 (N.D. Ill. 2011) (overruling objection; holding that it is sufficient for a class notice to state that attorneys would be applying for reimbursement of expenses without assigning a dollar amount and noting that there, as here, the plaintiffs had filed their fee brief prior to the close of the objection deadline).

### iv. Professional Objector Petrus' Claim of "Conflicts" Is Not Well-Founded.

Second, Mr. Petrus argues that sub-classes should have been created to avoid a purported conflict of interest between and among Class Members holding each of the four Discover products. This same argument was raised by Mr. Petrus—and expressly rejected—in *Sullivan*. The en banc panel in *Sullivan* noted "the potential drawbacks of subclassing, including the potential 'Balkanization of the class action,' and creation of 'a huge obstacle to settlement if each subclass has an incentive to hold out for more money,'" *Id.* at 326 (citations omitted), and held that no intra-class conflict exists where "all putative members experienced injury caused by [the defendant], all sought recovery for overpayment caused by [defendant's] behavior, and all shared common interests in establishing damages and injunctive relief." *Id.* at 327. This is precisely the case here. All Class Members' claims arise from Discover's imposition of fees on Class Members through improper related practices. Under the Settlement, all Class Members share a common interest in receiving the same core relief—adequate injunctive relief to end improper practices (which relief generally applies to all the Products), and fair compensation for the

charges already incurred.  Nor has Mr. Petrus identified any actual conflicts or otherwise stated how the Class Representatives—who have held the four Discover products at issue (Dkt. # 148-2, at ¶¶ 54, 55, 57, 60, 63, 67, 71, 75, 78, 81, 84, 85, 89, 92, 95, 99-102, 113, 116, 121, 127) — and their counsel are inadequate to represent Class Members holding those same products. Plaintiffs have vigorously pursued their claims through qualified counsel and secured a fair Settlement that benefits all Class Members.  Mr. Petrus' Objection should be overruled."

The appeal bond is warranted here because Objector's challenges to the fairness of the Settlement are without merit. *See Tri-Star*, 32 F. Supp. 2d at 150 ($50,000 bond appropriate given that appellants "raise meritless issues on appeal").

Objector may also claim that the attorneys' fees awarded in this case are excessive. However, the Seventh Circuit "requires courts to use a market-based approach and 'do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.'" *Carolina Cas. Ins. Co. v. Merge Healthcare Solutions, Inc.,* 2012 U.S. Dist. LEXIS 4772, at *18 (N.D. Ill. Jan. 13, 2012) (citing *In re Synthroid Marketing Litig*., 264 F.3d 712, 717-21 (7th Cir. 2001)).

In addition to the fact that this appeal bears indicia of frivolousness, there is a substantial risk of nonpayment in the event Objector's appeals fail.  Indeed, the appellant has not guaranteed payment of the costs that might be assessed against him.

While Petrus purports to be a *Pro Se* litigant, it is Plaintiffs' counsel experience that professional objectors such as Mr. Bandas "hide" behind *Pro Se* litigants to avoid making the Court aware of their long and troubling history.   Given that Mr. Petrus was previously represented by Mr. Bandas, and that he has family employed by Mr. Bandas, Plaintiffs' counsel

has reason to believe that this Objector is actually represented by counsel who has failed to file an appearance.

Finally, by delaying the distribution of the Settlement Fund to eligible class members, Objector jeopardizes these class members' recovery. In large settlements like this one, a "delay means more than simply loss of use, or the devaluation of the settlement fund," but it also means that "certain class members would lose the benefit to which they are entitled under the settlement, even if the appeal fails." *Barnes*, 2006 U.S. Dist. LEXIS 71072, at *3-4. In this case, the settlement provides for significant business practice changes which will be delayed solely because of Petrus' appeal. Accordingly, the facts of this case warrant an appeal bond.

> **D.**     **The Court Should Order Objector to Post a $25,000 Appeal Bond**

"The nature and amount of the bond is a matter left to the sound discretion of the district court." *Sckolnick v. Harlow*, 820 F.2d 13, 15 (1st Cir. 1987). Importantly, however, the appeal bond should be sufficient to cover and secure the costs of the appeal. *See In re: Wal-Mart Wage and Hour Emplyt Practices Litig.*, 2010 U.S. Dist. LEXIS 21466, at *17-18; *Tri-Star*, 32 F. Supp. 2d at 150 ($50,000 bond appropriate).

The Supreme Court defines "costs" to "refer to all costs properly awardable under the relevant substantive statute or other authority." *Marek v. Chesny*, 473 U.S. 1, 9 (1985). Costs for purposes of Rule 7 include all usual taxable costs including printing and producing copies of briefs, appendices, records, court reporter transcripts, or other costs to secure rights pending appeal. *See In re: Diet Drugs Prods. Liab. Litig*, 2000 U.S. Dist. LEXIS 16085, at *11 (E.D. Pa. Nov. 6, 2000) (imposing $25,000 bond for costs including printing and reproduction); *In re: NASDAQ*, 187 F.R.D. at 128 n.6 ("printing costs could easily amount to $1,500").

Costs securable by a Rule 7 appeal bond can also include the "damages and single or double costs to the appellee" awardable under Rule 38 where it is determined that an appeal is frivolous. Fed. R. App. P. 38; *see Barnes*, 2006 U.S. Dist. LEXIS 71072, at *2 (costs secured by appeal bond "include…attorneys' fees, as well as double costs under Fed. R. App. P. 38, and other costs delineated in Fed. R. App. P. 39"); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 2003 U.S. Dist. LEXIS 2578, at *5 (appeal bond "*can* cover damages assessed under Fed. R. App. P. 38"). This Circuit has not ruled on whether attorneys' fees are included in "costs," but has fully acknowledged that many circuits allow for the inclusion of attorneys' fees in the "costs." *See Walton v. City of Carmel*, 2008 U.S. Dist. LEXIS 45507, *9 (S.D. Ind. 2008). "Costs" can further include "the costs attendant to the delay associated with an appeal," *i.e.*, the ongoing costs of settlement administration while an appeal is pending. *Barnes*, 2006 U.S. Dist. LEXIS at *2; *see In re Cardizem*, 391 F.3d at 815 (including $123,429 in the appeal bond for "incremental administration costs" due to a projected six-month delay); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 2003 U.S. Dist. LEXIS 25788, at *5-7 (concluding that costs of delay or disruption of settlement may be included in a Rule 7 bond and granting $35,000 appeal bond); *In re Pharmaceutical Indus.*, 520 F. Supp. 2d 274 (recognizing that requiring an appeal bond ensures that a class "will not be injured or held up by spoilers" and imposing appeal bond of $61,000 for costs attributable to delay in distribution); *In re NASDAQ*, 187 F.R.D. at 128-29 (S.D.N.Y. 1999) (imposing appeal bond of $101,500 for costs including damages resulting from the delay and/or disruption of settlement administration); *In re Wal-Mart Wage and Hour Emplyt Practices Litig.*, 2010 U.S. Dist. LEXIS 21466, at *18-19 (imposing a $500,000 appeal bond per objector including administrative delay costs and interest costs).

13

In the present case, Plaintiffs (and Defendants) are certain to incur thousands of dollars of costs associated with filing briefs to be prepared in multiple copies by a professional appellate printer. *See* FRAP 39(c) (taxation of reproduction costs). Additionally, Plaintiffs will undoubtedly incur increased administrative expenses from the delay caused by Objector's appeal, which would include, among other expenses, additional expenses necessary to extend website maintenance and to process and respond to written and verbal inquiries about the status of claims processing during the appeal, as well as prepare and serve all necessary accounting and tax documents. Plaintiffs believe that $25,000 is a conservative estimate of the costs to be incurred during the pendency of the appeals, costs which as demonstrated herein they are entitled to security for in the present circumstances.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court issue an Order, pursuant to Rule 7 of the Federal Rules of Appellate Procedure, requiring Objector to post a bond of twenty-five thousand dollars ($25,000.00) within five (5) business days.

Dated: June 28, 2012

| | |
|---|---|
| _/s/ Diane E Sammons_____ | _/s/ Brian P. Murray_____ |
| Diane E. Sammons | Brian P. Murray |
| Bruce H. Nagel | Gregory B. Linkh |
| NAGEL RICE, LLP | MURRAY FRANK LLP |
| 103 Eisenhower Parkway, Suite 103 | 275 Madison Avenue, Suite 801 |
| Roseland, New Jersey 07068 | New York, NY 10016 |
| Tel: (973) 618-0400 | Tel: (212) 682-1818 |
| Fax: (973) 618-9194 | Fax: (212) 682-1892 |
| dsammons@nagelrice.com | bmurray@murrayfrank.com |
| bnagel@nagelrice.com | glinkh@murrayfrank.com |
| | |
| **CO-LEAD CLASS COUNSEL** | **CO-LEAD CLASS COUNSEL** |

## CERTIFICATE OF SERVICE

This is to certify that on this 28th day of June, 2012, I electronically filed the above with the Clerk of the Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record. I also served the above on Aaron Petrus, c/o Jan Petrus, 120 Woodhaven, Ingleside, TX 78362, by overnight delivery.

*/s/ Gregory B. Linkh*

Gregory B. Linkh